Filed 7/15/21  In re M.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.C., Defendant and Appellant. | E075247 (Super.Ct.Nos. J276040 & J276041 & J276042 & J276043 & J278394) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace and Steven A. Mapes, Judges.  Affirmed.

Susan Lawrence, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

M.G. (Mother) appeals from the judgment establishing a legal guardianship for her children E.G., Ma.G., I.G., Me.G., and E.C. (collectively, the Children) at a Welfare and Institutions Code section 366.26 hearing.

Mother claims that (1) there was insufficient evidence to support the juvenile court's finding that Mother did not benefit from her services and that the Children could not safely be returned to her custody at the 18-month review hearing; (2) there was no substantial evidence that Mother was provided reasonable visitation; and (3) this court should find good cause to excuse Mother from filing an extraordinary writ from the 18-month review hearing; or in the alternative this court should not enforce the forfeiture rule because the 18-month review hearing was fundamentally unfair so that an accurate and just decision was not obtained.

**FACTUAL AND PROCEDURAL HISTORY**

A.    <u>DETENTION OF E.G., MA.G., I.G., AND ME.G</u>

This family first came to the attention of San Bernardino County Children and Family Services (Department) when it received a referral on February 9, 2018, regarding inadequate medical and dental care being given to E.G. (a boy, born May 2008), Ma.G. (a boy, born Sept. 2009), I.G. (a boy, born Oct. 2013), Me.G. (a girl, born Feb. 2017) (collectively, older siblings).[1]

E.G., who was nine years old at the time, was still wearing diapers. He had only been to the doctor one time. E.G. was afraid of the bathroom. E.G. reported that Mother

_____

[1] The father, Is.G. (Father) is not a party to the appeal.

2

instigated domestic violence by attacking Father in front of the older siblings, and that he had broken Mother's methamphetamine pipe. Mother and Father (collectively, Parents) were separated. Mother and maternal grandfather had gotten into a fight and maternal grandfather slapped Mother. I.G. had four black teeth and had not received proper dental care.

A second referral was received on February 13, 2018, reporting that Ma.G. had cracked a tooth and it had not been fixed. Older siblings reported that they were not fed prior to going to school.

A social worker went to the home of maternal grandparents where Mother and the older siblings were living. The house was clean and had no visible hazards. Mother advised the social worker that she and Father were getting a divorce. She admitted acts of domestic violence but the older siblings had not been hurt. She did not have the money to get I.G.'s or Ma.G.'s teeth fixed and Father provided no financial assistance. Maternal grandmother told the social worker she had no concerns about Mother. Mother did not use drugs and took care of the older siblings. She would assist Mother in getting dental care for I.G. Mother assured the Department she would get I.G.'s teeth fixed and she agreed that E.G. may need counseling to address his encopresis. I.G. told a social worker he had seen Parents fight. Ma.G. claimed he had not witnessed any domestic violence.

Mother was a no-show for a drug test on April 3, 2018. Paternal grandparents were contacted. On April 27, 2018, a meeting was conducted with Father, paternal grandmother and Me.G. Mother had left Me.G. in the care of paternal grandparents and

3

had not returned. Paternal grandmother reported that Mother would leave for days and maternal grandparents would care for the older siblings. Father admitted to domestic violence charges from 2017 and 2018. Mother claimed she had been kicked out of maternal grandparents' home but older siblings were still in the home. Maternal grandfather denied that he kicked Mother out of the home. Mother was a no-show for drug testing again on May 1, 2018.

On May 2, 2018, Mother went to the home of maternal grandmother and told her that the social worker from the Department was lying and that Mother was doing everything she was supposed to be doing. I.G. had been scheduled for a dental appointment but Parents failed to take him to the appointment.

A meeting was conducted on May 3, 2018, at the Department's office. Mother admitted she was using methamphetamine and marijuana. It was determined that the older siblings would be detained with paternal grandparents. The older siblings could not be placed with maternal grandparents because Mother lived in the home. She stated she would move out but had nowhere to stay. The social worker was concerned that maternal grandmother covered for Mother and would not keep Mother from the older siblings. Ma.G. disclosed he had witnessed domestic violence between Parents. He had not said anything prior because he did not want Parents to get in trouble.

On May 7, 2018, the Department filed Welfare and Institution Code[2] section 300 petitions against Parents for older siblings. A failure to protect was alleged against

_____

[2] All further statutory references are to the Welfare and Institution Code unless otherwise indicated.

4

Parents pursuant to section 300, subdivision (b), based on substance abuse, failing to provide adequate medical care, and engaging in domestic violence. It was alleged against Parents for Me.G. and Ma.G. that they failed to obtain adequate dental care for I.G. and medical care for E.G. This posed a risk to their siblings. It was alleged against Parents for I.G., that they had failed to obtain adequate medical and psychological care for E.G. (§ 300, subd. (j)). It was alleged against Parents for E.G. that they failed to provide adequate care for I.G. (§ 300, subd. (j)). Supervised visitation was recommended for Mother one time each week for two hours.

The detention hearing for the older siblings was held on May 8, 2018. Older siblings remained detained with paternal grandparents. Supervised visitation was for a minimum of one time each week for two hours with authority to the Department to increase frequency and duration.

B.    <u>JURISDICTION/DISPOSITION REPORTS AND HEARING ON</u>

<u>SECTION 300 PETITIONS FOR OLDER SIBLINGS</u>

A jurisdiction/disposition report was filed on May 24, 2018, for older siblings' section 300 petitions. It was recommended that the allegations in the section 300 petitions be found true and that older siblings remain detained. Mother should be granted reunification services. Older siblings were happy and adjusting to paternal grandparents' home.

Mother was interviewed on May 22, 2018. She felt some of the allegations in the detention report were untrue. She always properly fed the older siblings. She only occasionally used methamphetamine and marijuana. She used marijuana to relax and

5

only used methamphetamine " 'when people piss[ed her] off.' " She acknowledged the domestic violence but she and Father were getting divorced. Mother was not working.

The Department provided information that on February 14, 2018, when the Fontana Police Department investigated the reports of child neglect, Mother admitted to using methamphetamine and that she was addicted to the substance.

The matter was sent to mediation. According to the mediation report, Parents agreed to submit on the section 300, subdivision (b), allegations and the subdivision (j), allegations as alleged, as to I.G. only. The Department agreed to dismiss the section 300, subdivision (g), allegations and the section 300, subdivision (j), allegations pertaining to inadequate medical care for E.G. Older siblings would remain with paternal grandparents and supervised visitation would be one time each week for two hours.

The jurisdiction/disposition hearing was conducted on June 22, 2018. Mother waived her rights and submitted on the section 300 petitions as agreed at mediation. Reunification services were ordered for Mother. Visitation was ordered for two hours each week with the Department authorized to liberalize visitation as to frequency and duration. Wraparound services were provided for E.G. effective July 31, 2018, and for Ma.G. effective October 2, 2018.

C.      DETENTION OF E.C.

Mother had been attending a substance abuse program in 2018 while she was pregnant with E.C. (a boy, born October 2018). Father was helping Mother care for E.C. but they were not living together. Mother was living with the maternal grandparents. Mother was allowed to keep custody of E.C. but Father was not to have any contact with

6

E.C. Mother had been doing well in her domestic violence therapy. On October 17, 2018, a family planning meeting was held. Mother had moved in with a paternal aunt who agreed to help with E.C.

On October 29, 2018, the Department filed a section 300 petition for E.C. Father was named alleged father of E.C. The petition alleged pursuant to section 300, subdivision (b), failure to protect, that Mother had a history of substance abuse, and had a history of engaging in domestic violence. It was further alleged pursuant to section 300, subdivision (j), that older siblings had been detained from Mother due to her substance abuse and domestic violence and Mother had not completed her reunification services. At the detention hearing on October 30, 2018, E.C. was removed from Father's custody but remained in Mother's custody.

An amended section 300 petition was filed on November 9, 2018, for E.C. E.C. had been detained from Mother and had been placed with paternal grandparents. The allegations in the amended petition remained the same. On November 9, 2018, Mother moved out of paternal aunt's home and into a sober living home with E.C. but then she was removed from the sober living home for failing to follow program rules. Mother moved back in with maternal grandparents. Further, Mother had been terminated from individual therapy based on only attending one session. At the detention hearing for E.C., the juvenile court ordered E.C. remain out of Mother's custody and he was placed with paternal grandparents. Visitation was ordered to be one time each week for two hours, supervised.

7

D.    JURISDICTION/DISPOSITION REPORT FOR E.C.

The jurisdiction/disposition report for E.C. was filed on November 20, 2018. Reunification services were recommended for Mother. The Department was concerned about Mother living with maternal grandparents as Mother continued to fight with maternal grandfather. Mother was trying to enroll in another substance abuse program. E.C. was placed with the older siblings. A paternity test showed that Father was E.C.'s biological father.

The hearing was held on December 4, 2018. Mother testified. She had been removed from the sober living facility for taking pain medication and posting a video online while in the facility. She had no positive drug tests. She then moved back in with maternal grandparents. She was still planning to divorce Father. She was attending a new outpatient drug treatment program and had been sober throughout her pregnancy. She wanted E.C. to remain in her custody. The juvenile court found the allegations in the section 300 petition true. E.C. was to remain in paternal grandparents' custody. Mother had exercised bad judgment and seemed to minimize the issues in the case. Reunification services were granted to Mother and visitation was to be supervised one time each week for two hours. Mother was advised that she could seek appellate review if she disagreed with the orders of the juvenile court and would need to file a notice of appeal within 60 days.

E.    STATUS REVIEW REPORTS FOR CHILDREN

A six-month status review report was filed for older siblings on December 19, 2018. It was recommended that older siblings remain in the home of paternal

8

grandparents and that reunification services for Mother be continued.  I.G. and Ma.G. both had their teeth fixed.  E.G. continued to wear diapers but was making efforts to use the restroom.  There was no medical reason for his inability to control his bladder.  Paternal grandmother reported that the Children were doing well in the home and in school.  They were benefitting from Wraparound services.

Mother had four negative drug tests in August and September 2018.  There were no additional updates although Mother was participating in domestic violence and parenting classes.  Visitation with Mother and older siblings had mostly been appropriate.  During one visit, at which paternal grandmother transported the older siblings to maternal grandparents' home, older siblings were uncomfortable because Mother and maternal grandfather were arguing.  E.G. and Ma.G. no longer wanted to visit Mother in maternal grandparents' home.  During visits, Mother played with older siblings and displayed appropriate limit settings.  Mother had moved out of maternal grandparents' home and did not have stable housing.  The trial court continued reunification services and added "authority for unsupervised visits for parents.  Any overnights, weekends, and return by approval packet."

On February 19, 2019, the Department submitted a progress report from Mother's therapist.  Mother was not consistent in attending therapy sessions; she attended five out of eight sessions.  Mother had trauma in her childhood.  She was reported as being suicidal and had impulse control problems.  The therapist opined Mother's mental health difficulties may be a result of substance abuse.  The therapist recommended an additional eight sessions and a full psychological examination, which the juvenile court approved.

9

On May 29, 2019, the Department filed the 12-month status review report for older siblings.  The Department recommended older siblings remain in the home of paternal grandparents and that family reunification services continue.

Mother had enrolled in an alcohol and drug treatment program but had been removed from the program for refusing to random drug test on April 3, 2019.  She also admitted using methamphetamine on February 5, 2019, and tested positive on that day.  On February 22 and March 13, 2019, she refused to drug test.  She enrolled in her third drug and alcohol program on April 4, 2019.  The Department did not have the results of Mother's psychological exam.  E.G. still required medical attention for his encopresis.  Ma.G. had been diagnosed with Attention Deficit Disorder.  I.G., Ma.G. and E.G. had become more aggressive but Wraparound services were helping them.  E.C. moved into paternal grandparents' home in November 2018.

Mother regularly visited with the Children.  Mother made paternal grandmother uncomfortable so visits were supervised at the Department offices.  Mother held E.C. and Me.G., and talked to E.G., I.G. and Ma.G. while they played with toys.  Mother had completed her parenting and domestic violence classes.  The juvenile court continued Mother's reunification services.  Wraparound services were ordered for I.G.

On May 28, 2019, the Department filed a six-month status review report for E.C.  It was recommended reunification services be continued and that E.C. remain in paternal grandparents' home.  The Department provided the same information as in the older siblings' 12-month status review report including the February 4, 2019, therapy update.

10

E.C. was healthy and developing normally. On June 5, 2019, the juvenile court continued reunification services.

The Department filed its 18-month status review report for older siblings on October 28, 2019, recommending that reunification services be terminated and that the section 366.26 hearing be set to establish a permanent plan of guardianship. Mother had completed her parenting class, domestic violence class and a psychological evaluation. Mother had been discharged from a third drug and alcohol treatment program on June 4, 2019, because she failed to consistently attend the program. She was allowed to reenroll in the program, but a progress report submitted to the Department on September 23, 2019, showed that she was still not consistent in attending. She had negative drug tests in August and September 2019. Mother was attending therapy. Mother was making "some progress" toward reaching her goals. She was sharing her feelings in a more natural way and was demonstrating more stability. The psychological evaluation was included with the report. The social worker was attempting to obtain an updated report from Mother's therapist.

E.G. was still wearing diapers but had been referred to specialists to determine if he had a medical issue that could resolve the problem. E.G. got into verbal altercations and would hit his siblings, and would use foul language, but he was getting better with Wraparound services. I.G. had become more aggressive but was working with Wraparound services to control his behavior.

11

Paternal grandparents were willing to be the legal guardians of the Children. Mother was consistent in visitation with the Children. Mother was living with maternal grandparents; E.G. and Ma.G. expressed concern about living with Parents.

Mother's psychological examination was conducted on April 2, 2019. Mother was 31 years old. She had no reports of any abuse or problems in her childhood. She dropped out of high school in 12th grade and had been employed sporadically due to being pregnant or caring for her children. Mother occasionally used marijuana but had not used in two years. She started using methamphetamine regularly when she was 29 years old and had last used two weeks prior to the evaluation. She denied any mental health issues; she was not depressed. Mother had been with Father since she was 17 years old. When Mother was 27 years old, with three children, Father had employment problems and cheated on her. In 2017, Father beat her, giving her a black eye. Father continued to beat her and cheat on her despite her becoming pregnant with their fourth child. She admitted hitting and kicking him in the past.

The evaluator concluded that Mother suffered from mild depression. She had some indication of "Dependent Personality Traits" as she had a history of dependency on others. She continued to engage in impulsive drug use when faced with stressors. Mother should continued to participate in therapy where she could be taught effective ways to manage these stressors without drug use, and to address her continued relationship with Father despite domestic violence. She had no real plan for how she would care for five children on her own. The evaluator concluded, "the same level of

12

risk that existed to the children prior to the involvement of [the Department] remains at the current time."

On October 28, 2019, the Department provided additional information to the juvenile court, including the therapist's report dated July 31, 2019, which showed that Mother had attended 20 out of 20 sessions between September 2018 and August 2019. Mother was motivated and engaged at counseling and she was making good progress. Mother had completed parenting classes, domestic violence classes and her therapy sessions. "Her behavior and insight have been remarkable." She was stable both mentally and functionally and she insisted she was not abusing controlled substances.

On November 1, 2019, at a section 366.22 hearing for the older siblings, the 18-month review hearing was set contested. Mother's counsel reported that Mother had completed 20 weeks of counseling and had completed a drug and alcohol program. Mother was authorized to have unsupervised visits.

On November 18, 2019, the Department filed a 12-month status review report for E.C. It recommended that reunification services for Mother be terminated and that a section 366.26 hearing be set with a permanent plan of legal guardianship with paternal grandmother. The Department again reported that Mother had trouble being consistent in her substance abuse treatment. The Department also reported the progress Mother had made in therapy and included the psychological evaluation. E.C. was happy in paternal grandmother's home. Mother was appropriate during visits with E.C. She played with him, fed him and changed his diaper.

The certificate dated October 31, 2019, showing that Mother had completed a drug and alcohol treatment program was provided to the juvenile court along with the 12-month status review report.

On November 18, 2019, additional information was provided by the Department for older siblings. Paternal grandmother reported that Mother had three unsupervised visits with the Children. E.G. reported to paternal grandmother that during the visit Mother continuously asked him about Father, which made him uncomfortable. Father also had given E.G. and Ma.G. cellular telephones and Mother called them three times each day. Mother tried to call them during school hours. Mother had called E.G. at 1:00 a.m. On November 16, 2019, Mother called several times and was told by E.G. and Ma.G. they could not talk to her at that time. Mother then texted paternal grandmother asking to speak with E.G. and Ma.G, and threatened to call the police. E.G. was worried that the police were going to come to paternal grandparents' house.

E.G. advised a social worker he was uncomfortable during visits with Mother because she asked about Father. Mother asked if Father was living with paternal grandparents, which E.G. denied. Mother did not believe him. E.G. was worried that paternal grandmother was going to jail. E.G. did not feel safe with Mother because "she acts weird and she gets into bad moods." Ma.G. reported Mother called him all the time. When asked if he felt safe visiting with Mother alone, he responded "I don't know. Yes." Mother was living in maternal grandparents' home but maternal grandparents had moved out. Mother did not believe calling E.G. and Ma.G. three times each day was excessive. She denied she asked E.G. about Father and also denied calling E.G. at 1:00 a.m.

14

The Department was concerned that despite Mother completing her education classes and counseling she was still a danger to the Children. The Department recommended that someone from Mother's family be present during visits.

The 18-month status review hearing for older siblings was held on November 19, 2019. Mother was present and testified. Mother insisted she had finished her case plan and found a place to live. She completed her drug and alcohol treatment two weeks prior. Mother had tried to drug test the day before but had not been in the system. She had been consistent in visitation and she believed the Children wanted to return to her care. They cried at the end of visits and wanted to go home with her.

Mother denied constantly asking about Father during visits. She had cut down calling E.G. and Ma.G. to two times a day. She denied calling during school hours and that she threatened to call the police on paternal grandmother. The call at 1:00 a.m. to Ma.G. was probably a "butt" dial. Paternal grandmother sometimes made her feel that she was a bad mom. She did not plan to reunify with Father.

Mother's counsel objected to the setting of the section 366.26 hearing. The Children should be returned to Mother's care. Mother loved the Children and was able to care for them. The Department argued that despite Mother appearing to have completed her case plan, she had not benefitted from services. Mother's therapist had noted in a November 1 update that Mother had frequent mood swings and had some instability. Mother testified that "everyone lies" about her. Older siblings had reported being uncomfortable with unsupervised visits. Further, Mother's information was, in fact, in the system to allow her to be drug tested.

15

The juvenile court terminated Mother's reunification services for older siblings and set the section 366.26 hearing with a permanent plan of legal guardianship with paternal grandparents. The juvenile court noted the last therapist's report showed Mother had not benefitted from services. Mother's perception was much different than others. Visitation continued supervised one time each week. Mother was advised of her right to file a writ petition.

The 12-month status review hearing for E.C. was held on November 20, 2019. Mother was not present at the hearing. The juvenile court found Mother failed to complete her court-ordered case plan. Mother's counsel requested the matter be set contested. The juvenile court stated that Mother had been present at the hearing the prior day involving older siblings; it had heard Mother's testimony and the testimony was "unconvincing." Further, since E.C. was only one year old, there was even more need for permanency. The juvenile court wanted to hear the matter immediately. Mother's counsel noted the report did not reflect that Mother had completed a drug and alcohol program. The juvenile court disagreed and noted that the information had been provided. Mother's counsel also noted Mother had appropriate housing, which had not been assessed. Mother's counsel argued that reunification services should not be terminated. Minor's counsel agreed with the recommendations of the Department. The psychological evaluation was concerning in that Mother was not capable of caring for E.C. The Department agreed that Mother was not benefitting from her services. Further, Mother had been granted unsupervised visits but they were changed back to supervised.

16

The juvenile court noted it would do the same as it had done with the older siblings. The testimony of Mother for E.C. would be the same as it was for the older siblings. Reunification services were terminated and a section 366.26 hearing was to set to be held at the same time as the older siblings' hearing. Visitation continued one time each week for two hours.

On November 27, 2019, Mother filed a notice of intent to file a writ petition to contest the finding at the 12-month review hearing for E.C. and the 18-month review hearing for older siblings. No writ petitions were filed.

F.      SECTION 366.26 REPORT

A combined section 366.26 report for the Children was filed on March 11, 2020. It was recommended that paternal grandparents be appointed legal guardians and the case be dismissed. Paternal grandparents believed that legal guardianship was the most appropriate plan. Mother was regularly visiting with the Children. If Mother failed to consistently visit, paternal grandparents would seek adoption.

Older siblings had no significant medical issues. E.G. still had uncontrolled urination and bowel movements. No medical problem had been discovered and it was believed emotional issues prevented him from going to the restroom. He would receive continued medical care. The Children were developing normally. Mother had visits with the Children two or three times each month supervised by the paternal grandparents. The visits were appropriate. Visitation with Mother was recommended to continue.

17

G.    SECTION 366.26 HEARING

The section 366.26 hearing was held on June 17, 2020.  Mother's counsel requested that the section 366.26 hearing be set for trial so Mother could testify.  The juvenile court noted that the recommendation was legal guardianship and asked what Mother would be testifying to.  Mother's counsel responded that Mother wanted the Children returned to her care and she objected to the legal guardianship.  The juvenile court responded, "Well since return is not an issue at a .26 hearing I'm going to deny that request."

The juvenile court appointed paternal grandparents the legal guardians of E.C. and the older siblings.  Mother was granted visitation a minimum of two times each month for two hours.  The case was closed.

Mother filed a notice of appeal on June 23, 2020.  She did not state from which order she was appealing.

**DISCUSSION**

Mother claims insufficient evidence was presented at the section 366.22 review hearings to support that returning older siblings and Evan to her care would create a substantial risk of detriment to the safety or well-being of the children, and that she did not benefit from her services.  The trial court also failed at the review hearings to make a specific finding that reasonable services had been provided to her, including whether she received reasonable visitation.  The juvenile court should not have set the section 366.26 hearing.  As acknowledged by Mother, such claims are not reviewable from an appeal of a section 366.26 hearing.  Mother was required to seek relief through the filing of an

18

extraordinary writ pursuant to section 366.26, subdivision (*l*), and she did not file such writ. Mother insists there is good cause to excuse her failure to file an extraordinary writ as she should have been given an opportunity to file the writ petition in propria persona once counsel determined that there were no factual or legal issues upon which to base a writ petition. Further, she should be excused from failing to file a writ petition because the 12-month and 18-month status review hearings for the children were fundamentally unfair because the social worker had a conflict of interest and Mother received ineffective assistance of counsel (IAC).

A.      FAILURE TO FILE WRIT PETITION

A party may not, through an appeal of the most recent dependency order, challenge a prior order for which the statutory time for a notice of appeal has expired. (*In re Liliana S.* (2004) 115 Cal.App.4th 585, 589; see also *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 ["an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order"].) "The rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders." (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.)

"A setting order is not appealable; direct appellate consideration of the propriety of the setting order may be had only by petition for extraordinary writ review of the order." (*In re Cathina W.* (1998) 68 Cal.App.4th 716, 719, fn. omitted (*Cathina W.*); see § 366.26, subd. (*l*).) This writ requirement is implemented by the California Rules of

19

Court, rules 8.450 and 8.452. (*In re A.A.* (2016) 243 Cal.App.4th 1220, 1239-1240 (*A.A.*).) "Failure to file a petition for extraordinary writ review within the period specified by rule, to substantively address the specific issues challenged, or to support that challenge by an adequate record shall preclude subsequent review by appeal of the findings and orders made pursuant to this section." (§ 366.26, subd. (*l*)(2).)

" 'When the court orders a hearing under Welfare and Institutions Code section 366.26, the court must advise all parties and, if present, the child's parent, guardian, or adult relative, that if the party wishes to preserve any right to review on appeal of the order setting the hearing under Welfare and Institutions Code section 366.26, the party is required to seek an extraordinary writ by filing a *Notice of Intent to File Writ Petition and Request for Record* (*California Rules of Court, Rule 8.450*) (form JV–820) or other notice of intent to file a writ petition and request for record and a *Petition for Extraordinary Writ* (*California Rules of Court, Rules 8.452, 8.456*) (form JV–825) or other petition for extraordinary writ.' " (*A.A.*, *supra*, 243 Cal.App.4th at p. 1240.)

"The courts have consistently held that when a parent is not properly advised of his or her right to challenge the setting order by extraordinary writ, and consequently the parent does not timely file a writ petition, good cause exists to consider issues relating to the setting hearing in an appeal from the order terminating parental rights." (*In re A.A.*, *supra*, 243 Cal.App.4th at p. 1235; see *In re Cathina W.*, *supra*, 68 Cal.App.4th at pp. 722-725.)

Here, Mother was present at older siblings' 18-month review hearing at which the juvenile court set the section 366.26 hearing. Mother was advised of the requirement to

file a writ petition if she did not agree with the findings at the hearings. She was not present at E.C.'s 12-month review hearing but was sent notice by mail of her requirement to file a writ. Mother's counsel filed a notice of intent to file writ petition on November 17, 2019, for both E.C. and the older siblings. Mother's counsel sent a letter to this court on January 6, 2020, advising that she had carefully reviewed the factual and legal issues and determined that there were no grounds to file a writ petition pursuant to California Rules of Court, rules 8.450 and 8.452.

As such, the failure by Mother to file the writ petition bars consideration of the issues raised by Mother on appeal. Her claims that insufficient evidence was presented to support the juvenile court's decision that it would be a detriment to return the Children to her care, that she had not benefitted from her services, and that she had not been afforded reasonable reunification services, and the court's ultimate decision to set the section 366.26 hearing, are not cognizable.

### B. GOOD CAUSE FOR FAILURE TO FILE WRIT PETITION

Mother insists there is good cause for her failure to file a writ petition as her trial counsel did not give her notice that counsel had decided not to file the writ petition; and this court should create a new rule that Mother should be notified and afforded the opportunity to file her own writ petition.

California Rules of Court, rule 8.450(c) provides in pertinent part that "petitioner's trial counsel, or in the absence of trial counsel, the party, is responsible for filing any notice of intent and writ petition under rules 8.450-8.452." Here, a notice of intent to file writ petition for the Children was filed on November 17, 2019, by Mother's trial counsel.

21

Thereafter, counsel for Mother, the same counsel present at the 18-month review hearing, notified this court that such writ petition would not be filed as no factual or legal issues existed to support filing the writ.

Mother's counsel did not have an obligation to file a writ petition. "[I]t is incumbent upon counsel who participate in dependency cases to advocate their clients' positions fully and effectively. This does not mean that counsel should file a . . . petition in every case, or in every case in which the client has filed a notice of intent to file such a petition. To the contrary, an attorney is required to maintain only such actions or proceedings 'as appear to him or her legal or just.' " (*Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, 582 (*Glen C.*).) In other words, "[W]hen an attorney evaluates a case and determines there is no potentially meritorious issue to be raised, a petition for extraordinary writ simply *should not be filed*." (*Id.* at p. 584, italics added.)

We must conclude on this record that Mother's counsel properly determined that filing a writ petition was not warranted under the facts of the case. As stated, without the filing of the writ petition, Mother cannot contest the findings at the 18-month and 12-month review hearings.

Mother contends that this court should conclude that when trial counsel determines a writ should not be filed, a parent should have the opportunity to file the writ petition in propria persona within the 10-day limitation period. Mother acknowledges that there is no case law supporting such a rule.

22

We decline to impose such a rule. While there are no cases directly on point addressing the filing of an in propria persona writ petition once counsel has decided that a writ petition should not be filed, there is support in other analogous cases for this court's determination that Mother is not entitled to such opportunity.

In *Glen C.*, *supra*, 78 Cal.App.4th 570, an inadequate writ petition was filed by the father of minors and he argued on appeal that the appellate court should independently review the record for possible errors. The court held, "Independent review along the lines of *Anders v. California* (1967) 386 U.S. 738 [] and *People v. Wende* (1979) 25 Cal.3d 436 [] would impose an extraordinary burden on the courts [citation] and is not required by either constitutional principle or policy for appeals from orders adversely affecting child custody or parental status (*In re Sade C.* (1996) 13 Cal.4th 952 []). *Sade C.* determined that *Anders* review, which is prophylactic in nature, is constitutionally required only for a criminal defendant represented by appointed counsel on his or her first appeal of right. [Citation.] Weighing the factors identified in *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 27 [], in the context of dependency appeals—and stressing the presumptive accuracy and justness of the decision appealed from—the court found the private interests of the parent and child 'fundamental' and 'compelling,' but presumptively inconsistent; the interest of the state in the child's welfare and in accurate and just resolution of the parent's appeal 'compelling' and 'important,' and its interest in reducing the cost and burden of the proceedings 'legitimate'; and the risk of error from absence of *Anders* review 'negligible.' " (*Id.* at p. 579.) The court concluded "Certainly

23

parents in these proceedings have no constitutional right to *Anders/Wende* review." (*Id.*, at p. 580.)

Further, in *In re Phoenix H.* (2009) 47 Cal.4th 835, mother's parental rights to her two sons were terminated. Her counsel on appeal filed an opening brief setting forth the procedural facts and history of the case but presented no arguable issues. Appellate counsel requested that the Court of Appeal independently review the record on appeal to determine if reversable errors were made. In addition, counsel requested that the appellate court give mother the opportunity to file her own supplemental brief. (*Id.* at p. 838.) The Court of Appeal declined to allow the filing of a brief by the mother and the California Supreme Court granted review. The California Supreme Court concluded, "the Court of Appeal is not required to permit the parent to file an additional brief absent a showing of good cause." (*Id.* at p. 843.) It determined as such, surmising "The delay that would ensue from requiring the Court of Appeal to permit an indigent parent to personally file a brief after appointed counsel has determined there are no arguable issues, absent a showing of good cause, would not be justified by an increase in fairness or accuracy of the proceedings." (*Id.* at p. 844.)

Here, Mother's counsel attested to this appellate court that she had carefully reviewed the record and found no factual or legal issues on which to base the extraordinary writ. Based on such finding, counsel did not file the writ and the matter was dismissed. We decline to find that Mother should have been afforded the opportunity to file a writ in propria persona. Like the court in *Glen C.* declined to independently review the record for error when counsel filed a no issue writ, and the

court in *In re Phoenix H.* declined to allow the mother to file a supplemental brief without good cause, we also decline to impose a rule that when counsel does not file a writ finding there are no issues properly raised in a writ, a parent is entitled to file his or her own writ as such review is not constitutionally mandated and would overburden the courts.[3]

Mother also appears to claim that she received IAC due to her counsel's failure to file the writ petition. Mother surmises that it is "doubtful" counsel reviewed Mother's last counseling report prior to informing this court she would not be filing a writ petition. Counsel should have filed a writ petition to address that the juvenile court failed to properly address Mother's final therapist's report.

"We address a claim of [IAC] in the dependency context by applying a two-part test. In the first step, we examine whether trial counsel acted in a manner expected of a reasonably competent attorney acting as a diligent advocate. If the answer is no, we move to the second step in which we examine whether, had counsel rendered competent service, the outcome of the proceeding would have been more favorable to the client." (*In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329-1330.) We reverse for IAC "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his [or her] act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581.)

---

[3] Mother's counsel at oral argument briefly referenced a miscellaneous order that supported her position but such argument was not raised in the briefing and will not be addressed by this court.

25

Here, the record is silent as to the specific reasons Mother's counsel did not file the writ petition. Mother's counsel stated that she had reviewed the record and determined that there was no factual or legal basis for filing the writ petition. Based on the appellate record, we must presume Mother's counsel reviewed the record as stated, which indisputably included Mother's final therapist's report, but also included Mother's psychological evaluation and an update on the visits between her and the older siblings. The record does not support that Mother's counsel simply ignored the records in this case in deciding not to file the writ petition.

As stated, it was incumbent upon Mother's counsel, if she determined that there were no meritorious issues to be raised, to not file the petition. (*Glen C.*, *supra*, 78 Cal.App.4th at p. 582.) Based on the record, Mother's counsel could have reasonably determined that a writ petition should not be filed. Without any further evidence in the record that Mother's counsel failed to review the record or relied on improper records, Mother cannot establish an IAC claim on appeal on the grounds that counsel should have filed a writ petition.

C.     FUNDAMENTALLY UNFAIR REVIEW HEARING

Mother additionally claims that this court should review her claim by finding an exception to the waiver rule because the review hearings were fundamentally unfair based on (1) the social worker had a conflict of interest and worked against her; and (2) her counsel was ineffective because she failed to adequately prepare for the review hearings.

26

As we have stated, "The [waiver] rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders." (*In re Jesse W.*, *supra*, 93 Cal.App.4th at p. 355.) As explained in *In re M.F.* (2008) 161 Cal.App.4th 673, "The waiver rule balances the interest of parents in the care and custody of their children with that of children in expeditiously resolving their custody status. [Citation.] In most instances, a parent's due process interests are protected despite the application of the waiver rule because the dependency system has numerous safeguards built into it to prevent the erroneous termination of parental rights. [¶] But, the waiver rule will not be applied if ' "due process forbids it." ' " (*Id.* at pp. 681-682.)

There are exceptions to the waiver rule. "First, there must be some defect that fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole. Lack of notice of [the right to file a writ petition] was one such example in *Cathina W.* Second, to fall outside the waiver rule, defects must go beyond mere errors that might have been held reversible had they been properly and timely reviewed. To allow an exception for mere 'reversible error' of that sort would abrogate the review scheme [citation] and turn the question of waiver into a review on the merits." (*In re Janee J.* (1999) 74 Cal.App.4th 198, 208-209 (*Janee J.*).)

Mother has presented no defect that fundamentally undermined the statutory scheme so that she was prevented from availing herself of the protections afforded by the

27

scheme as a whole.  Mother admits she was advised of her right to file a writ petition. We have rejected her claim of IAC in failing to file a writ petition.

Mother insists that the social worker had a conflict of interest and worked against her.  Mother claims the social worker determined during the reunification period that it was best for the Children to be placed in a legal guardianship with the paternal grandparents; the social worker failed to properly investigate the domestic violence allegations; and failed to timely obtain Mother's progress reports in therapy.  Further, the social worker failed to properly update the reports submitted to the juvenile court. Although Mother claims that this resulted in the proceedings being fundamentally unfair, as we have set forth at length in our procedural and factual history, the Department submitted all of the reports from Mother's therapist and a psychological evaluation.  The Department recommended on two occasions that Mother be granted additional reunification services.  Mother simply is attempting to avoid the waiver of her claims by raising "errors that *might* have been held reversible had they been properly and timely reviewed" but do not entitle her to escape the waiver rule.  (*Janee J.*, *supra*, 74 Cal.App.4th at pp. 208-209.)

Mother further attempts to avoid the waiver rule by claiming that her counsel at the 18-month and 12-month review hearings was ineffective because it was clear she was unprepared.  Such ineffective assistance of counsel rendered the review hearings fundamentally unfair.  "[L]ate consideration of [IAC] claims defeats a carefully balanced legislative scheme by allowing a back-door review of matters which must be brought for appellate review by rule [8.450] writ at the setting hearing stage or by earlier appeals, that

is, before the point is reached where reunification efforts have ceased and the child's need for permanence and stability become paramount to the parent's interest in the child's care, custody and companionship." (*Janee J.*, *supra*, 74 Cal.App.4th at p. 208.)

Mother's IAC claim is merely an attempt to raise a claim that should have been raised in a writ petition or at the 18-month review hearing. Mother complains that her counsel was not prepared for the hearing and did not protect her rights. She insists that counsel did not read the updated report from Mother's therapist and was not prepared at the review hearings.

Initially, if Mother had been concerned at the 18-month review hearing that her trial counsel was not pursuing her interests, she could have asked for new counsel. (See *In re V.V.* (2010) 188 Cal.App.4th 392, 398 [juvenile courts allow "parents, who have a statutory and a due process right to competent counsel, to air their complaints about appointed counsel and request new counsel be appointed"].) Mother remained silent regarding her counsel at the 18-month review hearing and did not attend the 12-month review hearing the following day for E.C. Mother expressed no concern with her counsel's performance at the review hearings.

Further, Mother's claim that counsel was not prepared and did not review the record is not supported by the record on appeal. Mother acknowledges that the Department provided the final therapist's report to the juvenile court on October 28, 2019, in which it was reported that Mother had attended all of her therapy sessions and was making good progress and her "behavior and insight have been remarkable." At the 18-month review hearing, Mother's counsel vigorously argued that Mother had

29

completed all of her case plan, including her therapy, which warranted return of the Children to her care. The Department had submitted Mother's therapist's report to the juvenile court on October 28, 2019, and it was considered by the juvenile court and Mother's counsel.

Based on the foregoing, Mother has failed to establish that she falls outside the waiver rule as she cannot establish the review hearings were fundamentally unfair. As such, she cannot raise any claims that the juvenile court's rulings at the 12- and 18-month review hearings for E.C. and the older siblings were not supported by the evidence or that she did not receive reasonable visitation. Mother raises no claims as to the section 366.26 hearing. The juvenile court order establishing a legal guardianship for E.C. and the older siblings with paternal grandparents is upheld on appeal.

## DISPOSITION

The juvenile court's order appointing paternal grandparents as legal guardians of the Children is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

MENETREZ
J.

30